JOSEPH BASTIAN, Appellant, v. RUDOLPH H. DREYER ET AL., Respondents.

### June 10, 1879.

1. There can be no recovery, at the suit of the payee, upon a note given for a consideration which is a fraud upon other creditors of the maker.

2. Where creditors sign an agreement to assign all their claims to a third person at an equal discount, the signature of one constituting an inducement for

signing by the others, any secret consideration or prospect of advantage moving one, which is purposely concealed from the others, is a fraud upon such others.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

T. J. ROWE, for appellant: The agreement ·was a contract to sell claims to another, and not a composition. — *Babcock* v. *Dill*, 43 Barb. 584 ; *Le Page* v. *McCrea*,.1 Wend. 164–172. It was not necessary that all or a majority of the creditors should sign it. — *Goldenbergh* v. *Hoffman*, 69 N. Y. (Ct. App.) 325 ; *Durgin* v. *Ireland*, 14 N. Y. 322 ; *Renard* v. *Fuller*, 14 Bosw. 107. The' services to be rendered in obtaining the signature of others to the agreement was a valuable consideration for the note. — *Frost* v. *Gage*, 85 Mass. 560 ; *Eldridge* v. *Strong*, 34 N. Y. 491. A note given in consideration of a doubtful claim is supported by a sufficient consideration. — *Kelfe* v. *Vogel*, 36 Iowa, 87 ; *Wyatt* v. *Evans*, 52 Ala. 285.

PATRICK & FRANK, for respondents : An agreement between two or more parties to perpetrate a fraud upon a third is an illegal consideration for a promissory note.— *Hamilton* v. *Skull*, 25 Mo. 166 ; *Fenton* v. *Hamm*, 35 Mo. 410 ; *Harwood* v. *Knapper*, 50 Mo. 457. "It is against the policy of the law to enable either party, in a controversy between themselves, to enforce an agreement in fraud of the law, or which was made to injure another." — *Randall* v. *Howard*, 2 Black, 587 ; 1 Story's Eq., sect. 298 ; *Balk* v. *Rogers*, 2 Paige, 156 ; *Wilson* v. *Watts*, 9 Gill, 356 ; *Church* v. *Mier*, 4 Vroom, 318 ; *Bickley* v. *Phosphate Co.*, L. R. 10 Q. B. 491 ; *Guernsey* v. *Cook*, 120 Mass. 501 ; *O'Shea* v. *Collier White Lead Co.*, 42 Mo. 397 ; *Bliss* v. *Matteson*, 45 N. Y. 22 ; 55 Ga. 262.

LEWIS, P. J., delivered the opinion of the court.

This suit is against the defendant Rudolph H. Dreyer as maker, and the defendant Robert G. Coleman as indorser,

of a promissory note for $450, payable to plaintiff. The defence is that the note was given without a good and sufficient consideration. The testimony tended to show that on February 14, 1876, plaintiff and defendant Dreyer were directors of the Farmers and Traders' Savings Institution, a banking corporation. Defendant Dreyer was also cashier of the institution, and plaintiff was a depositor. On that day plaintiff handed to defendant Dreyer, across the counter, a draft for $600, drawn in plaintiff's favor by a bank in New Orleans on a bank in New York, and requested him to collect it. Dreyer entered the draft to plaintiff's credit on his deposit account, and on the same day took it, with other drafts, to the Mercantile Bank, where it was passed to the credit of the Farmers and Traders' Savings Institution in the usual course of business under an arrangement between the two banks whereby the Mercantile Bank undertook all clearing and collecting of foreign drafts for the other corporation. On the following day, February 15, the Farmers and Traders' Savings Institution failed, and closed its doors. Its account was largely overdrawn at the Mercantile Bank, and that corporation retained the draft and its proceeds. At the time when plaintiff delivered the draft to Dreyer, he had on current deposit in the Farmers and Traders Institution about $1,319.37, including some interest on a time-deposit. Plaintiff afterwards proved his claim before the assignee for $1,919.67, which included the $600 draft. On this entire amount of his allowance he was paid two successive dividends. A few weeks after the failure of the institution, an agreement was signed by the plaintiff and other creditors, in the following terms: "We, the undersigned, agree with Robert G. Coleman and with each other, to sell and assign to him, the said Coleman, all our respective claims and demands that we may have against the Farmers and Traders' Savings Institution of St. Louis, at and for the price of twenty-five per cent of the face of said claims and

demands respectively, provided payment thereof be made us in cash on or before the fifteenth day of July, 1876. This offer to be open and irrevocable until that day."

The testimony further tended to show that before the plaintiff signed this agreement he repeatedly demanded of Dreyer payment of the amount of the $600 draft, and Dreyer uniformly denied all personal responsibility on that account, averring that the whole affair was purely a bank transaction. Plaintiff insisted that Dreyer should pay him ; and when asked by Dreyer to enter into the agreement with Coleman, refused to do so unless he was first paid or secured the amount of the draft. After much discussion in repeated interviews, it was finally agreed that plaintiff would sign the contract with Coleman upon condition that Dreyer would give him his note for $450, with Coleman as indorser. By this arrangement, plaintiff would receive $150 from Coleman, and the $450 on the note would then satisfy the whole claim. The transaction was carefully kept secret. It was supposed that, if known, it would prevent other persons from signing the Coleman agreement, and it was understood that plaintiff would use his influence in procuring such signatures. The note here in suit was thereupon executed and indorsed according to the agreement. The Circuit Court held that the consideration for the note was void, as a fraud upon other creditors who signed the Coleman agreement, and as against public policy.

The law is well settled that in a case where an instrument is signed by a number of parties, and where it is generally understood that the fact of the signing by one or more constitutes part of the inducement for the signing by others, if there be any secret inducement or prospect of advantage moving the former which is purposely withheld from the latter, this constitutes a fraud against the parties prejudiced, which will avoid the instrument. *Miller* v. *Simonds*, 5 Mo. App. 33. The principle is, that A. may have sufficient confidence in B.'s judgment to adopt it as his own, upon a

state of facts and motives in which each has a like interest. But if B. have a special and controlling inducement affecting himself only, it is a fraud to deprive A. of an opportunity to consider B.'s judgment and to exercise his own, in the light of his own exclusion from such a special inducement. Further, if B. professes to sign because A. does so, and upon a mutual understanding that their respective gains or sacrifices are to be equal, the supposed mutuality vanishes when it is discovered that B. was impelled by a secret consideration which can never bring any benefit to A.

There was some testimony in the present case to the effect that certain of the parties to the Coleman agreement were induced to sign it by the fact alone of the plaintiff signing. But this was not needed. The expression declaring that the parties agree '' with each other'' is sufficient to show that a mutuality lay in the fact of the signing by each and all; in other words, the making of the agreement by one was the consideration for the obligation assumed by another. Plaintiff here contends that this part of the agreement is void for want of consideration. The surrender of a right, as well as the receipt of value, may be a sufficient consideration. Each signer in this case surrenders seventy-five per cent of his demand against the bank. This he does virtually at the instance and request of the other signers, and thus furnishes a consideration sufficient to bind them in their several obligations. The agreement is valid, and on its face shows that the execution by each party was an inducement and consideration for execution by the others.

It is urged for the plaintiff that no evidence in this case shows the $600 draft to have been included amongst the claims which were to be sold to Coleman; but the plaintiff's acts and admissions furnished abundant testimony for that purpose. He caused it to be included in the allowance against the bank as a part of his claim, and afterwards received two dividends on the whole allowance, notwithstanding the fact that he held the note here sued on for

three-fourths of the same demand. He asserted in every possible way that this was a demand of his against the bank, and nothing more was needed to bring it within the terms of the agreement.

It is immaterial to the purpose of this inquiry that the agreement was not signed by all the creditors of the insolvent bank. There was no stipulation on that subject, and the agreement was, on its face, binding upon all who signed it. It was not strictly a composition, but was a sale by the creditors of their demands to a third party. All these and other elements of validity in the transaction are none the less subject to a condition which the law implies in every contract : that all is fair and above-board, and that no taint of secret reservation or preference, giving one party an unknown advantage over others, shall make the contract different from what the parties intended. It does not help the matter to assume that the plaintiff held a disputed claim against the maker of the note, or that a note given in consideration of indebtedness due from a third party may be sustained as founded on a sufficient consideration. The question is, not what were subordinate or ancillary moving causes, but what was the material and controlling consideration for which the note was given. The testimony tended to prove, and the instructions given were based on that hypothesis, that the note would not have been given but for the plaintiff's consent to sign the agreement, and thus far, at least, induce other creditors to do the same. This, then, was the real consideration for the note and its indorsement.

Reference is made to *Goldenbergh* v. *Hoffman*, 69 N. Y. 322, as showing that a sale of their claims by creditors to a third party does not stand on the same footing with a composition among creditors. That this is true, for certain purposes, will not be denied. But there is no parallel in the rulings in that case with the law that governs this. Certain creditors of an insolvent firm agreed to sell their

claims to a third party at fifty per cent of their face value. The plaintiff, who was one of those creditors, received the price agreed upon, and transferred his claim. Afterwards he discovered that the transferee had paid to some other creditors, including two who had signed the agreement, a greater price than fifty per cent of their claims. Plaintiff therefore sued for the residue of his claim, alleging fraud. It was held that no fraud was apparent, and that he could not recover. If the cases were otherwise coincident, the essential feature was wanting in that case which appears in this, to wit, a preference or special advantage reserved or secured at the time of the making of the agreement. It was not there pretended that any concealment or false representation had accompanied the execution of the contract. In the present case this feature is conspicuous as the chief ground of the defence. The point is, not that the plaintiff afterwards obtained better terms than other creditors of the insolvent, but that he secretly stipulated for and got them at and before the signing of the agreement. So far as concerns the question of good faith thus arising, it is impossible to perceive any difference between this case and one of a composition with creditors. The rights and interests of the creditors are similarly affected in both transactions. A concealment which will operate a fraud upon them in the one case cannot be harmless in the other. In *O'Shea* v. *Collier White Lead Company*, 42 Mo. 397, our Supreme Court said : " In a deed of composition made by a debtor for the benefit of his creditors at large, each creditor who signs comes into the agreement on the understanding that all will share mutually, or according to the terms embodied in the instrument ; and if signatures of some of the creditors have been obtained by secret bargains or obligations granting them more favorable terms than the general scope of the composition deed will warrant, a gross deception is practised on the other creditors, and both law and equity will adjudge the transaction void ; and any security given

in pursuance of such contracts is absolutely void, even against the debtor who may have given such security.'' It is also held that any agreement between two or more parties to perpetrate a fraud upon a third, is an illegal consideration for a promissory note. *Harwood* v. *Knapper*, 50 Mo. 457.

The action of the Circuit Court in giving and refusing instructions was in substantial conformity with the views herein expressed. All the judges concurring, the judgment is affirmed.